COPY

1   KENT W. EASTER, State Bar No. 199838
      kentweaster@gmail.com
2   LAW OFFICE OF KENT EASTER
    18 Santa Eulalia
3   Irvine, CA 92673
    Telephone:  (949) 981-9447
4   Facsimile:  (949) 861-6205

5   Attorney for Defendant
    DUAL DIAGNOSIS ASSESSMENT AND
6   TREATMENT CENTER, INC.

7

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11  DUAL DIAGNOSIS ASSESSMENT    CASE NO.  CV13-6935 SVW (VBKx)
    AND TREATMENT CENTER, INC.,
12                  Plaintiff,
13         v.                             COMPLAINT
14  THE CALIFORNIA DEPARTMENT OF   JURY TRIAL DEMANDED
    HEALTH CARE SERVICES, MARY
15  HUGHES, XEROX BUSINESS
    SERVICES, LLC, and DOES 1-25.
16
17                  Defendants.
18
19
20
21
22
23
24
25
26
27

LAW OFFICE 28
OF KENT EASTER

                        COMPLAINT

Dual Diagnosis Assessment and Treatment Center, Inc. ("Dual Diagnosis" or "DDATC") alleges for its Complaint as follows:

1.      Dual Diagnosis brings this action for damages and injunctive relief because it has been unjustly and outrageously singled out for discriminatory treatment by the Department of Health Care Services ("DHCS").  DHCS and Xerox Business Services LLC ("Xerox"), the entity that is responsible for processing Medi-Cal claims for the State of California, have conspired together to block all efforts of Dual Diagnosis to obtain reimbursement from Medi-Cal for its services and force Dual Diagnosis out of business in an attempt to cover up the gross failings of Xerox in handling Dual Diagnosis's Medi-Cal claims.

2.      California's Department of Health Care Services is the state agency which administers California's plan, known as Medi-Cal, implementing the Federal Medicaid program to subsidize medical care for the poor and indigent. DHCS has contracted with private entities, as permitted by Federal law, to review and process provider claims for payment for services rendered to Medi-Cal patients.

3.      Since 2009, Xerox has been the fiscal intermediary contracted with the State of California to process claims for reimbursment from providers of Medi-Cal services such as Dual Diagnosis.  Xerox also operates the Small Providers Billing Unit for DHCS to assist certain Medi-Cal providers with submitting claims for reimbursement and to provide training to enable these providers to submit claims for reimbursement on their own.

4.      Beginning November 26, 2011, Xerox breached its obligations to compentently process Dual Diagnosis' claims and failed to train Dual Diagnosis on how to properly submit electronic claims for reimbursement.

5.     Despite Xerox's employees acknowledgement in writing of their errors, DHCS has ignored Dual Diagnosis's efforts to have its Medi-Cal claims properly considered.  Instead, Xerox and DHCS employees have made false accusations against Dual Diagnosis to get DHCS to launch a retaliatory audit against Dual Diagnosis to cover up Xerox's gross failures and permanently put Dual Diagnosis out of business.

## JURISDICTION AND VENUE

6.     Plaintiff Dual Diagnosis is a California corporation with its principal place of business in Inglewood, California.

7.     This Court has jurisdiction over this matter because the claims involving DHCS involve a federal question pursuant to 28 U.S.C. § 1331 and 1343.  The declaratory and injunctive relief sought is authorized by 28 USC § 2201 and 2202, and 42 U.S.C. § 1983.

8.     This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that Plaintiff and Xerox are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     The Court has jurisdiction over Xerox because they have purposefully availed themselves of the laws of California by pursuing business opportunities and transacting business within the state of California.

10.     Venue is proper in this judicial district in accordance with 28 U.S.C. §1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because Xerox has significant contacts with this district by doing business within this district.

## PARTIES

11.     Plaintiff Dual Diagnosis is a provider of school-based health care services to poor and low income students in predominately minority school districts in Southern California.  Dual Diagnosis has been almost entirely reliant on Medi-Cal reimbursements for its services.

12.     Defendant DHCS is a California governmental agency.  DHCS is the single California state agency charged with the administration of California's Medicaid program, known as Medi-Cal.  DHCS is located in Sacramento, California.

13.     Defendant Mary Hughes is DHCS's Chief of Provider Relations Oversight Unit, CAMMIS Division.  Defendant Hughes was identified to Dual Diagnosis as the person responsible for responding to Dual Diagnosis's requests for timeliness overrides on its claims for reimbursement and for reconsideration of Dual Diagnosis's resubmitted claims.

14.     Defendant Xerox Business Services, LLC is a Delaware limited liability company with its principal place of business in Dallas, Texas.  On information and belief, its members are citizens of Delaware and no member is a citizen of California.  In 2009, Xerox was awarded a contract with DHCS to serve as the fiscal intermediary for processing provider claims for Medi-Cal reimbursement.

15.     The true names or capacities whether individual, corporate or associate or otherwise of defendants, Does 1 through 25, inclusive, are unknown to Plaintiff, at this time, who therefore sues said Defendants by such fictitious names. Plaintiff will ask to leave to amend this Complaint to show their true names and capacities when said information has been ascertained.

## FACTS

16.     When Dual Diagnosis began operations in 2010 to provide health care services to youths and families through its school-based model in Southern

California, DDATC contacted the DHCS on numerous occasions to obtain assistance with setting up its billing for Medi-Cal reimbursement. Dual Diagnosis made repeated service requests for the regional representative to come to its office for assistance with structure of services and correct coding.

17.     Ultimately after one year of requesting help, Dual Diagnosis was directed to contract with the Small Provider Billing Unit (the "SPBU") of DHCS for the SPBU to submit claims to Medi-Cal for reimbursement and to train Dual Diagnosis for submitting future claims for the health services Dual Diagnosis. The SPBU is operated by Xerox (formerly known as ACS).

18.     SPBU agreed to take on Dual Diagnosis on November 26, 2011, with full knowledge that DDATC had a larger number of claims than most providers working with SPBU because of the difficulty DDATC had experienced in getting assistance from DHCS. SPBU also agreed to accept all of Dual Diagnosis' unbilled claims for submission to Medi-Cal. At the time SPBU agreed to contract with Dual Diagnosis to submit its existing claims to Medi-Cal for reimbursement, SPBU knew DDATC had a backlog of claims that, if they were not promptly submitted, would soon become untimely.

19.     Dual Diagnosis had numerous claims that were 4 to 5 months old because DDATC had faced significant delays in obtaining necessary eligibility determinations from the County of Los Angeles' Department of Social Services ("DPSS") eligibility workers. These DPSS eligibility workers were not able to see DDATC's patients promptly enough to provide timely eligibility determinations, and DDATC had to wait for DPSS to provide retroactive approvals.

20.     SPBU staff, specifically Sydney Ryden, a Xerox employee, assured Dual Diagnosis that the SPBU would submit all of Dual Diagnosis's claims to Medi-Cal for reimbursement and that SPBU would obtain any required overrides

or waivers to ensure that Dual Diagnosis's claims would not be denied as untimely, so that Dual Diagnosis could receive full reimbursement without any deductions or penalties for untimely submissions.

21.     Instead, a nightmare has unfolded.  Due to a series of blunders by the Xerox employees in the SPBU, very few of Dual Diagnosis' claims for 2011 were properly submitted to Medi-Cal for reimbursement.  These errors by Xerox personnel resulted in hundreds of improper claim denials from errors, including, but not limited to:

- instructing Dual Diagnosis to process claims on CMS 1500 forms instead of UB-04 forms;
- excessive delay in processing claims;
- misinformed misguided and misdirected instructions throughout the contract term;
- failing to process claims timely causing Dual Diagnosis' existing backlog to remain unbilled;
- failure to monitor successful electronic transmissions;
- submitting claims with erroneous CPT Codes and allowing them to be approved;
- failure to correct CPT codes;
- incorrectly denying patient services involving Other Health Coverage (OHC) and failuring to return and correct mistakes as promised;
- entering erroneous revenue codes;
- providing erroneous instructions regarding medi-reserve;
- providing erroneous instructions regarding EPSDT;
- failing to review complete and correct claims prior to submission per contract stipulation,
- failing to resolve claims left in suspense by the Medi-Cal system,

- failing to monitor proper procedure coding,
- failing to provide proper training on claim denials and/or resubmission turnaround documents,
- failing to jointly process claims for up to nine months per the SPBU agreement,
- failing to monitor claims for 12 months per the SPBU agreement; and
- failing to correctly list eligibility clearances 'issue dates' causeing in-eligibility status.

Moreover, SPBU's slow processing caused most of Dual Diagnosis's 2011 claims and new 2012 claims to become untimely.

22.     Then, on February 13, 2012, Sydney Ryden of Xerox suddenly informed Dual Diagnosis that despite the SPBU's agreement to accept Dual Diagnosis's claims for processing, she refused to accept any more claims.

23.     Even worse, on July 3, 2012 Ryden admitted in writing, and which was re-confirmed by Blanca Castro of Xerox on July 6, 2013, that Ryden had made a mistake in informing Dual Diagnosis that SPBU could obtain a timeliness override for Dual Diagnosis' claims.

24.     All told, over 9,000 claims for Dual Diagnosis totaling over $2 million were either not properly submitted or never submitted to Medi-Cal for reimbursement.

25.     At the time DDATC signed up with the SPBU, the Xerox employees knew DDATC had many old claims needing to get processed promptly or DDATC risked losing reimbursement.  Xerox accepted DDATC into the SPBU program despite its size and the number of its claims.  Ms. Ryden expressly wrote that she knew DDATC had more than 100 claims per month but agreed to "over look" this and process DDATC's claims because of DDATC's backlog siutation.

26.     Importantly, however, Ms. Ryden promised to continue processing claims older than 6 months to clear the backlog.  A true and correct copy of Ms. Ryden's February 13, 2012 email to Dual Diagnosis is attached hereto as **Exhibit A**.

27.     Then, in July 2012 Ms. Ryden admitted that she had made a further mistake in informing DDATC that she was authorized obtain a timeliness override from DHCS to preserve DDATC's older claims.  A true and correct copy of Ms. Ryden's July 3, 2012 email to Dual Diagnosis is attached hereto as **Exhibit B**.

28.     Furthermore, the SPBU and Ms. Ryden breached its agreement to train Dual Diagnosis and negligently advised Dual Diagnosis on how to electronically bill claims on its own.  Ms. Ryden instructed Dual Diagnosis to use form CMS 1500 for electronic claims, rather than form UB-4, which caused DDATC even further problems.  None of the electronic claims DDATC submitted on CMS 1500 were able to be processed for reimbursement, costing DDATC thousands more in damages.

29.     Subsequently, Dual Diagnosis learned that electronic claims should not use CMS 1500 and Xerox's employee and Ms. Ryden's superior, Blanca Castro, acknowledged that DDATC was mistakenly advised by Ms. Ryden to use CMS 1500 for electronic claims, rather than UB-4.  A true and correct copy of Ms. Castro's July 12, 2012 email to Dual Diagnosis is attached hereto as **Exhibit C**.

30.     As a result, by mid-2012, Dual Diagnosis was facing a severe financial crisis.  Dual Diagnosis was heavily dependent on receiving reimbursement from Medi-Cal for its services.  With more than a 12 month backlog in receiving reimbursement on the services it provided, Dual Diagnosis had to stop seeing new patients and digging itself a deeper hole.  In the

meantime, Dual Diagnosis had engaged a third party billing company to assist with electronic billing and was able to successfully submit some claims from 2012 for reimbursement.

31.     Facing a loss of the vast majority of its claims for untimeliness, Dual Diagnosis communicated with Ms. Castro that DDATC needed her assistance to obtain a timeliness override from DHCS to allow DDATC to resubmit claims denied because of the SPBU's errrors, as well as to submit claims that had never previously been submitted for reimbursement due to the SPBU's inability to get through all of DDATC's claims.

32.     However, by August 2012, Dual Diagnosis had not received any timeliness override from DHCS.  Faced with the irretrievable loss of the opportunity to receive any reimbursement on these claims,  Dual Diagnosis wrote to executives at Xerox, the operator of the SPBU, requesting urgent assistance with obtaining a timeliness override so that all of Dual Diagnosis' claims could be properly submitted to Medi-Cal, including the claims that SPBU had agreed to process and then refused to accept due to its backlog.

33.     While in response to the appeal to Xerox, DHCS did provide Dual Diagnosis with a timeliness override in September 2012, DHCS only granted it with respect to previously denied claims.  The override did not include all of the unsubmitted claims that Ms. Ryden had asked Dual Diagnosis to hold back until she DHCS has taken the position that it was not informed that a timeliness override was requested on unsubmitted claims.

34.     DHCS also did not disclose that it had worked with Xerox employees to narrow the requested timeliness override to exclude Dual Diagnosis's claims that the SPBU had never even gotten around to submitting to Medi-Cal.  Unbeknownst to Dual Diagnosis, Ms. Castro had initially prepared a request for a timeliness override to allow all of Dual Diagnosis' claims, both

1    submitted and unsubmitted, to be considered for reimbursement.  In this request,

2    Ms. Castro again acknowledged Xerox's mistakes with respect to both the timely

3    submittal of claims and with erroneous instructions regarding the correct

4    processing of electronic claims.  A true and correct copy of the draft July 2012

5    timeliness override request to DHCS is attached hereto as **Exhibit D**.

6         35.    However, this timeliness override was subsequently revised and

7    narrowed by a DHCS employee, Mike Branum, to limt the request for a

8    timeliness override only to previously denied claims, even though Mr. Branum

9    was aware that a less restrictive override was needed to successfully process all

10   of Dual Diagnosis' claims.  This revised request was resubmitted to DHCS and

11   Xerox without any disclosure to or approval by Dual Diagnosis.  Worst still, the

12   changes to the override from the original override request placed restrictions

13   designed to impede the claims from ever passing the standard Medi-Cal edits.  A

14   true and correct copy of the revised timeliness override requests to DHCS are

15   attached hereto as **Exhibit E.**

16        36.    By late November 2012, with still no resolution yet of these

17   reimbursement issues, Dual Diagnosis had to make a decision to move out of its

18   Signal Hill office, lay off full-time staff, and move its equipment and all of its

19   confidential records into deep storage.  On December 4, 2012, Dual Diagnosis

20   notified Nicole Craven, Dual Diagnosis's DHCS field representative, of the

21   planned move and requested that a Ms. Craven come out to do a courtesy review

22   of Dual Diagnosis' operations prior to dismantling everything and to personally

23   give Ms. Craven a copy of a letter giving notice of the emergency move, the

24   reduction in the work force, and the reasons for them.   Ms. Craven made

25   arrangements to come to Dual Diagnosis prior to the records being sent to

26   storage.  Then, on December 5, 2012 the day of the scheduled visit, Ms. Craven

27   cancelled.

37.    Dual Diagnosis then sent a letter to the Department of Public Health and on December 7, 2012 via e-mail to Mary Hughes, DHCS's Chief of Provider Relations Oversight Unit, CAMMIS Division informing them of the emergency shutdown and move.  A copy was also sent to Medi-Cal Provider Enrollment.

38.    Then, on December 18, 2012, Dual Diagnosis renewed its request to DHCS for a timeliness override for previously unsubmitted claims from 2011 because SPBU did not request the appropriate override and outlined in detail the mistakes SPBU had made with its billing for DDATC.  On December 19, 2013, DHCS informed Dual Diagnosis that it could only process the claims if they had been submitted and rejected.

39.    Dual Diagnosis communicated to Mary Hughes on December 20, 2012 that it feared that due to Dual Diagnosis having had to write to Chad Harris, Senior Vice President and Group President of Xerox of the complaints and errors of the SPBU to get any action taken on the request for a timeliness override, that Dual Diagnosis would be retaliated against.

40.    Ms. Hughes responded on December 21, 2012 assuring Dual Diagnosis that Xerox is under contractual requirements related to claims processing and provider services and the acceptance of claims is based soley on policy and edits programmed into the system, not on the personal whim of individuals.

41.    What Dual Diagnosis did not know (and Ms. Hughes did know) is that, by this time, Ms. Castro of Xerox had reported Dual Diagnosis to DHCS for fraud and used the fact that Dual Diagnosis was no longer able to operate at its prior office as purported evidence that Dual Diagnosis was a fraudulent clinic. Ms. Castro made clear in an email to Ms. Hughes that as a result of her fraud report, Xerox and DHCS should be able to avoid responsibility for SPBU's repeated gross errors and failures.   A true and correct copy of Ms. Castro's

December 11, 2012 e-mail is attached hereto as **Exhibit F**.  Dual Diagnosis only became aware of this e-mail after DHCS produced documents in April 2013 in response to a public records act request.

42.    Then in February 2013, Dual Diagnosis learned that Ms. Hughes and the DHCS's Provider Relations Oversight Unit were demanding that Dual Diagnosis provide additional documentation regarding its denied claims.  Dual Diagnosis was informed that that DHCS could only process the claims if they contain a Remittance Advice Detail ("RAD") specifying the reason a claim had been previously rejected.  Dual Diagnosis is not able to submit a RAD for most of its claims because the SPBU had failed to submit them in the first place. DHCS's Provider Relations Oversight Unit also returned all of the documentation Dual Diagnosis had sent DHCS for consideration under the timeliness override.

43.    Ms. Hughes also demanded that Dual Diagnosis produce a list of all school sites that Dual Diagnosis had served in 2011 and 2012 with names, addresses and administrators of each site.  Hughes made clear that if this information was not provided by Dual Diagnosis, DHCS would not process any of submitted claims.

44.    Ms. Hughes then contacted administrators at each school site, casting a pall on Dual Diagnosis' relations with the schools and school districts, and intending to shut down the contracts and services performed by Dual Diagnosis.

45.    As a result of all of the foregoing, Dual Diagnosis filed a claim for discrimination against Ms. Hughes with the Victims' Compensation and Goverment Claims Board and received a right to sue letter.

46.    In addition, counsel for Dual Diagnosis responded by writing DHCS to ask for additional guidance.  Counsel also repeated Dual Diagnosis' request that DHCS grant Dual Diagnosis the expanded timeliness override initially

requested so that all of Dual Diagnosis's claims, including those claims that Ms. Ryden of Xerox asked Dual Diagnosis not to submit to her until she had gotten through the backlog, could be considered for reimbursement.  Dual Diagnosis was given instructions from DHCS on providing additional documentation by April 11, 2013, but Dual Diagnosis's request for the correct timeliness override was completely ignored.

47.    Dual Diagnosis also submitted many previously unprocessed 2011 claims to the Medi-Cal system to trigger the issuance of the RADs requested by DHCS, and therefore Dual Diagnosis resubmitted all of the requested documentation to DHCS's Provider Relations Oversight Unit by the May 10, 2013 deadline.

48.    Instead of receiving any response, let alone a single dollar in reimbursement, Dual Diagnosis was informed that DHCS was initiating an audit of Dual Diagnosis.

49.    Then, on May 28, 2013 Dual Diagnosis was sent a notice of that as a result of the audit, Dual Diagnosis's Medi-Cal billing status was being temporarily suspended by DHCS, thereby preventing Dual Diagnosis from receiving any reimbursement from Medi-Cal for any future services provided.

50.    Furthermore, Dual Diagnosis is informed and believes that DHCS also contacted California's Department of Public Health ("CDPH") and alleged to CDPH that Dual Diagnosis is a fraudulent clinic.  This has caused CDPH to rescind Dual Diagnosis's emergency relocation application on August 12th, 2013 after being previously approved.  Included with the rescission of the emergency relocation appliacation was a demand that Dual Diagnosis suspend its medical clinic license or CDPH will be forced to revoke the license.  This has effecively stopped Dual Diagnosis from conducting any new business, not only with Medi-Cal beneficiaries but also private insurance.

51.     Thus, at the very point Dual Diagnosis was finally hoping to get relief from Xerox's failures to properly submit it claims for reimbursement and to obtain a timeliness override for its older claims, DHCS and Xerox have made sure Dual Diagnosis must stop conducting business.

## CLAIMS FOR RELIEF

### COUNT I

### Breach of Contract Against Defendant Xerox

52.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

53.     On November 26, 2011, Dual Diagnosis entered into a written agreement with the SPBU, operated by Xerox, to have the SPBU timely process Dual Diagnosis' Medi-Cal claims for reimbursement and to provide traning to Dual Diagnosis on electronic claim submittal.

54.     In exchange, Xerox was to be compensated per claim pursuant to its contract with DHCS.

55.     The SPBU, operated by Xerox, was obligated under its written agreement with Dual Diagnosis to timely process Dual Diagnosis's claims for reimbursement, and it knowingly accepted Dual Diagnosis' older claims while representing that it could and would obtain any necessary overrides to ensure full payment.

56.     The SPBU failed to do any of this thereby breaching its written agreement with Dual Diagnosis.

57.     The SPBU also failed to properly train Dual Diagnosis on how to properly submit claims electronically.  Ms. Ryden instructed Dual Diagnosis to use form CMS 1500 instead of the UB-04.

58.    As a direct and proximate result of Defendant Xerox's breaches of contract, Plaintiff received almost no reimbursements from Medi-Cal from 2011 and even less for 2012.  Dual Diagnosis has had to lay off all of its full time staff, and has suffered millions of dollars in compensatory and consequently damages in amounts to be proven at trial.

## COUNT II

### Negligence Against Defendant Xerox

59.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

60.    The SPBU, operated by Xerox, had a duty under its agreement with Dual Diagnosis to timely process Dual Diagnosis's claims for reimbursement obtain any necessary overrides for Dual Diagnosis's older claims that it knowningly accepted to ensure full consideration for payment.

61.    The SPBU, operated by Xerox, also had a duty under its agreement with Dual Diagnosis to appropriately train Dual Diagnosis on the correct submission of electronic claims for reimbursement.

62.    Xerox breached its duty by failing to timely process Dual Diagnosis's claims for reimbursement obtain any necessary overrides for Dual Diagnosis's older claims that it knowningly accepted to ensure full consideration for payment.

63.    Xerox also breached its duty by failing to appropriately train Dual Diagnosis on the correct submission of electronic claims for reimbursement.

64.    As a result of Xerox's breaches, Plaintiff received almost no reimbursements from 2011 and none for 2012.  Plaintiff had to engage at its own expense a third-party billing company to properly submit for reimbursement

1    electronically those claims from 2012 that had not already been rendered

2    untimely by Xerox's failures.

3          65.    As a direct and proximate result of Defendant Xerox's negligence,

4    Dual Diagnosis has had to lay off all of its full time staff, and has suffered

5    millions of dollars in compensatory and consequently damages in amounts to be

6    proven at trial.

7

8    **COUNT III**

9    **Negligent Misrepresentation Against Defendant Xerox**

10         66.    Plaintiff incorporates by reference the allegations contained in the

11   preceding paragraphs of this Complaint as if fully set forth herein.

12         67.    Dual Diagnosis was completely dependent on receiving

13   reimbursement from Medi-Cal for its services.  Based on SPBU and Xerox

14   employee Sydney Ryden's false and misleading representations in November

15   2011 to Dual Diagnosis's principal, Dr. Edna Miller, that Ms. Ryden could obtain

16   reimbursement for Dual Diagnosis, Dual Diagnosis's investors loaned additional

17   money to the company as a bridge to receiving payments from Medi-Cal.

18         68.    Ms. Ryden of Xerox made further false and misleading

19   representations to Dual Diagnosis and Dr. Miller in February 2012 when she

20   instructed Dual Diagnosis not to submit further claims to the SPBU until she

21   could obtain a timeliness override for all of Dual Diagnosis's claims.

22         69.    At the time Ms. Ryden made these representations, she should have

23   known that she did not have the authority or the ability to obtain a timeliness

24   override on her own for Dual Diagnosis's claims.

25         70.    Dual Diagnosis reasonably relied on the representations of Xerox's

26   employees Ms. Ryden and Ms. Castro.

27

28   LAW OFFICE
     OF KENT EASTER

-- 15 --

COMPLAINT

71.    As a direct and proximate result of Defendant Xerox's negligent misrepresentations, Plaintiff received almost no reimbursements from 2011 and 2012.  Dual Diagnosis has had to lay off all of its full time staff, and has suffered millions of dollars in compensatory and consequently damages in amounts to be proven at trial.

**COUNT IV**

**42 U.S.C. Sec. 1983 Violation of Equal Protection**

**Against Defendants DHCS and Mary Hughes**

72.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

73.    The federal equal protection clause (U.S. Const., 14th Amend.) and its California counterpart (Cal. Const., art. I, § 7, subd. (a)) provide that persons who are similarly situated with respect to the legitimate purpose of a law must be treated alike under the law.

74.    Dual Diagnosis has been treated differently from other similarly situated persons and entities by DHCS and Mary Hughes in the consideration of its requests for timeliness overrides and resubmission of its claims that were grossly mishandled by Xerox.  Unlike other persons and entities seeking administrative overrides from DHCS, Dual Diagnosis has had its requests for adminstrative overrides unilaterally and secretly amended to narrow the requests.

75.    In addition, unlike other other persons and entities seeking resubmission of its claims, DHCS has refused to respond to Dual Diagnosis with even denials of its claims, thereby denying Dual Diagnosis the right to appeal any denial.  This is despite Ms. Hughes' specific representation to Dual Diagnosis that Xerox is under contractual requirements related to claims processing and that the consideration of any of Dual Diagnosis's claims for resubmission would be

based soley on policy and edits programmed into the Medi-Cal system, not on the personal whim of individuals.

76.    The difference in treatment was intentional in order to cover up Xerox's liability to Dual Diagnosis, and there was no rational basis for the difference in treatment.

77.    In the face of the repeated written admissions by Xerox of its significant and substantial errors in processing Dual Diagnosis's claims and in training Dual Diagnosis, DHCS and Hughes's difference in treatment is so unrelated to the achievement of any combination of legitimate purposes that the only conclusion can be that DHCS and Hughes actions have been irrational.

78.    As a direct and proximate result of Defendant DHCS's violations of Dual Diagnosis's right to equal protection under the law, Dual Diagnosis suffered millions of dollars in losses and has been effectively put out of business and prevented from continuing to serve poor and low income students.

**COUNT V**

**42 U.S.C. Sec. 1983 Violation of Due Process**

**Against Defendants DHCS and Mary Hughes**

79.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

80.    As a provider of health services to poor and indigent students, Dual Diagnosis has rights to reimbursement for covered services, to prompt payment of its claims, and to appeal the denial of claims under state and federal laws. DHCS and Hughes's actions have deprived Dual Diagnosis of due process under these rights and this deprivation was committed under color of state law.

81.    DHCS and Hughes's actions in refusing to provide Dual Diagnosis with the requested adminstrative overrides, refusing to process Dual Diagnosis's

resubmitted claims, initiating an audit into Dual Diagnosis, temporarily suspending Dual Diagnosis's Medi-Cal status, and causing the CDPH to suspend Dual Diagnosis' clinic license has been outrageous or egregious conduct constituting an abuse of power.  Moreover, it shocks the conscience for DHCS and Hughes to have taken these actions with the full knowledge that Xerox admitted to its gross errors in handling Dual Diagnosis's claims and to have used the resulting financial ruin to Dual Diagnosis as a pretext for initiating an audit for fraud.

82.    As a direct and proximate result of Defendant DHCS's violations of Dual Diagnosis's due process rights under the law, Dual Diagnosis suffered millions of dollars in losses and has been effectively put out of business and prevented from continuing to serve poor and low income students.

## **PRAYER FOR RELIEF**

WHEREFORE, Dual Diagnosis seeks the following relief:

a.    For compensatory damages from Defendant Xerox in an amount to be determined at trial;

b.    For consequential damages from Defendant Xerox in an amount to be determined at trial;

c.    For appropriate injunctive relief against Defendants DHCS and Hughes as allowed by 42 U.S.C. Sec. 1983, including the enjoining and permanent restraining of the violations alleged herein, and direction to Defendants DHCS and Hughes to take such affirmative action as is necessary to ensure that the effects of their unconsitutional and unlawful practices are eliminated and do not continue to effect Plaintiff's rights;

LAW OFFICE
OF KENT EASTER

-- 18 --
COMPLAINT

d.     For appropriate declaratory relief regarding the unlawful and unconsitutional acts and practices of all Defendants;

e.     That pursuant to 18 U.S.C. § 1983 and/or other applicable laws, Dual Diagnosis be awarded its attorney's fees incurred in connection with this action;

f.     That Dual Diagnosis be awarded its costs of suit incurred herein; and

g.     That Dual Diagnosis be granted such other and additional relief as this Court deems just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED:  September 19, 2013

Respectfully submitted,

LAW OFFICE OF KENT EASTER

By:_____
Kent W. Easter

Attorney for Defendant
DUAL DIAGNOSIS ASSESSMENT & TREATMENT CENTER, INC.

LAW OFFICE OF KENT EASTER

-- 19 --

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

Subject: Medi-Cal billing
Date: Mon, 13 Feb 2012 15:55:19 -0600
From: Sydney.Ryden@acs-inc.com
To: hcdd@live.com
CC: dtmental_case@msn.com; kturner@hcecorp.org

Hello all:

I have received your large batches of claims and have sent them in for processing. There were a few billing discrepancies that I am unable to correct, these claims are being sent back in the mail to you. The Family PACT patient's certification date needs to be on the same date or next day of service to make those billed procedures eligible for payment. The claims I am sending back the dates of service are too far from the certification and eligibility date that these claims will deny.

I was hoping to get an update on the electronic claims that have been told were submitted by your office are they processing smoother? The volume that has been sent to me cannot continue, I am only supposed to accept up to 100 claim lines per month from each of the providers that I assist. I did agree to help reconcile your accounts and at this time I will only be accepting and processing your older than 6 month claims, dates of service starting in July 2011.

This next phase of the program we are going to focus on claims follow up procedures, CIF's and Appeals. My goal is to train you all to efficiently and effectively bill Medi-Cal so that you do not need my help. I will be sending the phase advancement letter in the mail.

I still do have the list of claims that were denied for missing place of service and will be attending to those issues in the next two weeks.

Thank you for your patience and please let me know if you have any questions or training requests.

Thank you,

Sydney Ryden

Small Provider Billing Unit Specialist

Outreach & Education

California MMIS

ACS, A Xerox Company

820 Stillwater Road

West Sacramento, CA 95605


p  916.373.2822

f  916.617.4021


www.acs-inc.com


CONFIDENTIALITY NOTICE: This email message, including any attachments, is for the sole use
of the intended recipient(s) and may contain confidential and privileged information.  Any
unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended
recipient, please contact the sender by reply email and destroy all copies of the original message.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

From: Sydney.Ryden@xerox.com
To: hcdd@live.com
Subject: RE: Your Permission
Date: Tue, 3 Jul 2012 21:19:42 +0000

I apologize for the delay in my response. I have made a mistake and have been working to correct it. I will not be able to provide you with a letter only the Department of Healthcare Services has the authority to send letters to the provider community and override claims.  Your issue has been escalated to my leadership and a timeliness override form has been submitted to the Department of Healthcare Services for approval, we should be hearing back in 5-10 business days. Because of the large quantity of claims and the age of the claims this will require DHCS approval which I was not aware of this process until recently which is my error.

Please know I have discussed and escalated this request to my manager and she will be reaching out to her DHCS contacts this week. I will let you know as soon as I receive notification of this request.

Thank you,

Sydney Ryden
Northern Regional Provider Representative

Outreach & Education
California MMIS

ACS State Healthcare, LLC, A Xerox Company
820 Stillwater Road

West Sacramento, CA 95605

www.acs-inc.com

CONFIDENTIALITY NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

From: Health Care Dual Diagnosis [mailto:hcdd@live.com]
Sent: Monday, July 02, 2012 6:10 PM
To: Ryden, Sydney
Subject: Your Permission
Importance: High


Dear Sydney, I contacted the Small Billing Unit in hopes of speaking with a supervisor because we did know if something had happen to you because it is unusual that you were not responding. Karen indicated that she is over our account.  I told her that I only needed to reach you so that the Medical Factoring Company could receive the letter indicating that our claims would be processed with a late submission override due to special circumstances beyond our control.  She requested that I send her copies of all correspondence with you. I indicated that I would not do so unless you gave me permission because of communication privacy act. I also told her that our case is so complicated that it would be very stressful to start over from the beginning with explanations and that it would be best if we continued with you.  Nevertheless, please advise if you are going to keep our file and finish. We have come so far, it would be better to finalize the resubmission and then we are comfortable moving forward without the small billing unit after you process our paper claims that are nearing completion for the re-submits.  Lastly if you are not going to close out the last of our claims, please advise if you give permission to forward correspondence between us.

 Kind Regards!


 Dr. Edna Miller,
Executive Director
Health Care Enrichment
P.O. Box 92619
Long Beach, California 90809-2619
888-417-5163 Office
562-683-0386 Fax



This e-mail communication and any attachments, including documents, files, or previous e-mail messages, constitute electronic communications within the scope of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq. This e-mail communication may contain non-public, confidential or legally privileged information intended for the sole use of the designated recipient(s). The unauthorized and intentional interception, use, copy or disclosure of such information, or attempt to do so, is strictly prohibited and unlawful under applicable laws. 18 U.S.C. § 2511. If you have

received this e-mail communication in error, please immediately notify the sender by return e-mail
and delete the original e-mail from your system.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**

LAW OFFICE OF
KENT W. EASTER

From: Blanca.Castro@xerox.com
To: hcdd@live.com; Sydney.Ryden@xerox.com
CC: dm_5@ymail.com; dr_miller@hcecorp.org; jcollins4@gmail.com
Subject: Re: Approval from DHCS
Date: Thu, 12 Jul 2012 01:58:30 +0000

Dr. Miller
We will include verbiage that this delay was due to incorrect information which you were provided by SPBU analyst.

Incidentally you mentioned that you were referred to SPBU by an analyst. Do you have the name or Service Request number created in the over one year unit?
Blanca Castro
Outreach and Education Manager
Xerox Health Care LLC
California MMIS
c-916-284-3576
o 916-373-2140

From: Health Care Dual Diagnosis [mailto:hcdd@live.com]
Sent: Wednesday, July 11, 2012 01:52 PM
To: Castro, Blanca; Ryden, Sydney
Cc: David <dm_5@ymail.com>; Dr. E Miller <dr_miller@hcecorp.org>; Jim <jcollins4@gmail.com>
Subject: RE: Approval from DHCS

Thank you for your response! Please see answers' below in Red.


 Dr. Edna Miller,
Executive Director
Health Care Enrichment
P.O. Box 92619
Long Beach, California 90809-2619
888-417-5163 Office
562-683-0386 Fax



This e-mail communication and any attachments, including documents, files, or previous e-mail messages, constitute electronic communications within the scope of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq. This e-mail communication may contain non-public, confidential or legally privileged information intended for the sole use of the designated recipient(s). The unauthorized and intentional interception, use, copy or disclosure of such information, or attempt to do so, is strictly prohibited and unlawful under applicable laws. 18 U.S.C. § 2511. If you have received this e-mail communication in error, please immediately notify the sender by return e-mail and delete the original e-mail from your system.

From: Blanca.Castro@xerox.com
To: hcdd@live.com; Sydney.Ryden@xerox.com
CC: dm_5@ymail.com; dr_miller@hcecorp.org; jcollins4@gmail.com
Subject: RE: Approval from DHCS
Date: Fri, 6 Jul 2012 00:44:13 +0000


Dr. Miller:


Sydney Ryden has briefed me on this situation and we are requesting the Timeliness Override from the DHCS, Did the timeliness override request to DHCS include any language referencing the additional six months it took the small billing unit to process our claims?  Please be advised that we were directed to use the small billing unit when we requested assistance with our claims from the analyst who we were assigned at the time.


they are the only entity that can approve this for over 1 year old claims.  I am very sorry that you were not provided with the technical support you needed and would like to know if you are still in the Small Provider Billing Unit, since this program is only for providers who bill 100 claim lines or less per month and who do not use a billing agency to process their claims.  Please clarify, it is our understanding that we must continue to process the re-submissions that were denied and removed from the system with the small billing unit as those paper claims began with your agency.  Next, we do not use a billing company but we have hired an expert certified billing manager who is well versed and experienced.  He is currently working on new claims that will be submitted electronically. He is editing all of the backlog denials which is more than 3000 claim lines that originated with Sydney.  Those claims after receiving the answer from DHS will be returned to you to process with the override code as paper claims again unless your agency instructs us differently.  Our volume of patients that we see daily does not allow us to continue with the small billing unit other that the backlog paper claims that must be re-submitted.


Once DHCS completes the request, and if they approve this request, then we will provide you with the confirmation.  Please be kind enough to provide us with a copy of your request submitted on our behalf.  If your request does not include language regarding the small billing unit's responsibility in causing part of the delay we respectfully ask that your unit includes a letter regarding all of the rules that caused an additional time delay in the processing of our claims.  We greatly appreciate your input in helping to resolve this matter.  Thanking you as well

Thank you for your patience.


Blanca




Blanca E. Castro

Manager, Outreach and Education Department

California MMIS


Xerox State Healthcare, LLC

820 Stillwater Road

West Sacramento, CA 95605


P    916.373.2140

M   916.284.3576

F    916.617.4021


www.xerox.com/govhealthcare


CONFIDENTIALITY NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

From: Health Care Dual Diagnosis [mailto:hcdd@live.com]
Sent: Thursday, July 05, 2012 4:46 PM
To: Ryden, Sydney; Castro, Blanca
Cc: David; Dr. E Miller; Jim
Subject: Approval from DHCS
Importance: High


Dear Sydney,

I have met with our Board of Director's regarding the Small Billing Unit's request to the Department of Health Care Services for approval to override timeliness in processing the re-submissions for our paper claims that are now aged one year.

The concern is that when we signed the agreement for assistance from the small billing unit, (November 2011) our claims were right at five to six months aged.  Because of the rules associated with the  Small Billing Units requirement to only process 100 claim lines  per month, the paper claim requirement, your backlog that prevented you from working on our claims, training and corrections, etc;  caused a further delay in processing, making the claims now more than one year aged.   Will the additional contributing factors of working with the small billing unit causing the one year delay be taken into consideration in the approval override request to DHCS?  Please advised asap.



Next, the Board is also requesting a copy of your approval request sent to DHCS for our records.



Kind Regards,


 Dr. Edna Miller,
Executive Director
Dual Diagnosis Assessment and Treatment
P.O. Box 92619
Long Beach, California 90809-2619
888-417-5163 Office
562-683-0386 Fax



This e-mail communication and any attachments, including documents, files, or previous e-mail messages, constitute electronic communications within the scope of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq. This e-mail communication may contain non-public, confidential or legally privileged information intended for the sole use of the designated recipient(s).

The unauthorized and intentional interception, use, copy or disclosure of such information, or attempt to do so, is strictly prohibited and unlawful under applicable laws. 18 U.S.C. § 2511. If you have received this e-mail communication in error, please immediately notify the sender by return e-mail and delete the original e-mail from your system.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**

AUTHORIZATION TO OVERRIDE



USE BLACK INK ONLY

DHCS Payment Systems Division

3215 Prospect Park Drive, Rm. 160

Rancho Cordova, CA  95670-5702

Reference Number:  1-28208947

Date:  7/2/2012

| PART I: Requesting Information and Explanation |
|---|

Requestor's Name ( ☐ DHCS/ ☒ ACS Staff)          Telephone Number:  916-842-6223

Please override edits as checked:

☒  Timeliness          ☐  Eligibility          ☐  TAR          ☐  Other:
                              (requires verification)   (requires copy)   (specify error codes)

**Provide a brief explanation/justification of the request:**
(If you need additional space for explanation, continue on a separate sheet, and attach to this form.)
See attached timeline;
November 2011, Provider has reached out for assistance because they were informed of incorrect claim processing information by Sydney Ryden the SPBU specialist at the time. They are hoping to submit claims that were originally submitted incorrectly.

The provider called the general SPBU number in November looking for assistance with their billing issues. Dual Diagnosis was informed of their regional rep resource, but claimed to have difficulty in contacting them. They continued to call Sydney Ryden for assistance and enrolled in SPBU on November 28, 2011.

Sydney was the specialist who incorrectly instructed the provider to bill on a CMS 1500 in the end of December 2011.

The Provider submitted claims that denied for RAD code 0008, 9909, 0037, 0145, 0139, 0062

Due to the incorrect instructions provided to Dual Diagnosis by SPBU in December 2011, and the delay in processing their claims in the SPBU unit, these claims would have been timely back in December 2011 had they been correctly

PART II:  Claim Information

Provider Name: Dual Diagnosis Access and Treatment                 Provider Number: 1659324408

| Denial Reason Code: 21 | Denial Description: This claim was not received within one year |
|---|---|

Claim(s) to be overridden:  (add documentation if more space is needed)

☐  Single Claim to be overridden          ☒  Multiple Claims to be overridden

| Beneficiary's Name | Beneficiary ID # | Date of Service | Claim Control Number |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

ACS Supervisor Signature:_____          Date:_____

PART III:  Authorization

DHCS APPROVAL

Reviewed by DHCS Analyst (      ):  _____          Date:_____

Reviewed by DHCS (Manager-Mary Hughes):  _____          Date:_____

Authorized by DHCS (Chief PSS-Bonnie Kinkade):_____    Date:

DRAFT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT E**

AUTHORIZATION TO OVERRIDE

DRAFT

USE BLACK INK ONLY

DHCS Payment Systems Division

3215 Prospect Park Drive, Rm. 160

Rancho Cordova, CA  95670-5702

Reference Number: 1-28208947

Date:  9/17/2012

| PART I: Requesting Information and Explanation |
|---|

Requestor's Name ( X) DHCS/( ) ACS Staff)          Telephone Number:  916-373-2642

Mike Branum

Please override edits as checked:

[×]  Timeliness          [ ]  Eligibility          [ ]  TAR          [ ]  Other:
                        (requires verification)    (requires copy)    (specify error codes)

*Change*

Provide a brief explanation/justification of the request:

(If you need additional space for explanation, continue on a separate sheet, and attach to this form.)

Due to a long term and ongoing CMC processing issue this provider has had a large number of denied claims.  In order to reprocess and pay these claims in a timely manner, Xerox is directed to create a timeliness override to bypass the E/C 025 timeliness cutback for this provider.  This one time override will apply only to previously denied claims with dates of service less than one year old.  DHCS requires that the timeliness override be left in place until 31 Dec. 2012 and would like to be contacted no later than 17 Dec. 2012 so the issue can be reviewed before the OR is ended.

PART II:  Claim Information

Provider Name: Dual Diagnosis Access and Treatment          Provider Number: 1659324408

Error Code: 025          Denial Description:  Claim not received within 6 months following the month of service

Claim(s) to be overridden: (add documentation if more space is needed)

[ ]  Single Claim to be overridden          [×]  Multiple Claims to be overridden

| Beneficiary's Name | Beneficiary ID # | Date of Service | Claim Control Number |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

ACS Supervisor Signature:_____          Date:_____

PART III:  Authorization

DHCS APPROVAL

Reviewed by DHCS Analyst (        ):  _____          Date:_____

Reviewed by DHCS (Manager-Mary Hughes):  _____          Date:_____

PROFabs 7/07

Authorized by DHCS (Chief PSS-Bonnie Kinkade): _____    Date: _____

DRAFT

AUTHORIZATION TO OVERRIDE

USE BLACK INK ONLY

DHCS Payment Systems Division        Reference Number: 1-28208947

3215 Prospect Park Drive, Rm. 160

Rancho Cordova, CA 95670-5702        Date: 10/17/2012

| PART I: Requesting Information and Explanation |
|---|

Requestor's Name ( X) DHCS/( ) ACS Staff)     Telephone Number: 916-373-2642

Mike Branum

Please override edits as checked:

| ☒ Timeliness | ☐ Eligibility (requires verification) | ☐ TAR (requires copy) | ☐ Other: (specify error codes) |
|---|---|---|---|

Provide a brief explanation/justification of the request:
(If you need additional space for explanation, continue on a separate sheet, and attach to this form.)

Due to a long term and ongoing CMC processing issue this provider has had a large number of denied claims. In order to reprocess and pay these claims, Xerox is directed to create a timeliness override for E/C 076 and to bypass the E/C 025 timeliness cutback, for this provider. The override will apply only to denied claims with dates of service more than one year old (a separate override request is being implemented for claims less than one year but over six months). Please note that in order to be eligible for this one time override each claim must include a copy of the Remittance Advice and the original denial code must be indicated. In addition, the proof of eligibility requirement **is not being** waived so each paper claim must be submitted with a valid proof of eligibility. DHCS requires that the timeliness override be left in place until 31 Dec. 2012 and would like to be contacted no later than 17 Dec. 2012 so the issue can be reviewed before the OR is ended.

PART II: Claim Information

| Provider Name: Dual Diagnosis Access and Treatment | Provider Number: 1659324408 |
|---|---|

| Denial Reason Code: 021 | Denial Description: This claim was not received within the one year maximum billing limitation. |
|---|---|

Claim(s) to be overridden: (add documentation if more space is needed)

| ☐ Single Claim to be overridden | | ☒ Multiple Claims to be overridden | |
|---|---|---|---|
| Beneficiary's Name | Beneficiary ID # | Date of Service | Claim Control Number |
| | | | |
| | | | |
| | | | |

ACS Supervisor Signature: _____ Date: _____

PART III: Authorization

DHCS APPROVAL

Reviewed by DHCS Analyst ( ): _____ Date: _____

Reviewed by DHCS (Manager-Mary Hughes): _____ Date: _____

PROPubs 7/09

Authorized by DHCS (Chief PSS-Bonnie Kinkade):_____    Date:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT F**

**Branum, Michael (DHCS CA-MMIS-OMB)**

| | |
|---|---|
| **From:** | Castro, Blanca <Blanca.Castro@xerox.com> |
| **Sent:** | Tuesday, December 11, 2012 9:43 AM |
| **To:** | Branum, Michael (DHCS CA-MMIS-OMB); Chand, Ajinesh; Mcmahan, Richard |
| **Cc:** | Hughes, Mary (DHCS CA-MMIS-OMB) |
| **Subject:** | Re: Timeliness override |

*Emergency move Dec. 5th 2012*

Mike

This is an old issue Mary did do a T/O. We have gone through this with Dr. Edna Miller.

Print and Distribution asked me to go to check their place of business because their CIF forms kept being returned since their was nobody to sign for them.

I shared with Mary our findings, there was an office but they were closed at during normal business hours.

I have referred them to our Fraud Unit. So I suggest that we not allow them to use their old complaint that an SPBU analyst gave them incorrect info in 2011 so now all their claims even the ones that were not part of the batch that SPBU had helped them with.

Blanca
Blanca Castro
Outreach and Education Manager
Xerox Health Care LLC
Caiifornia MMIS
c·916-284-3576
o 916-373-2140

**From:** Branum, Michael (DHCS CA-MMIS-OMB) [mailto:Michael.Branum@dhcs.ca.gov]
**Sent:** Tuesday, December 11, 2012 12:04 PM Eastern Standard Time
**To:** Castro, Blanca; Chand, Ajinesh; Mcmahan, Richard
**Cc:** Hughes, Mary (DHCS CA-MMIS-OMB) <Mary.Hughes@dhcs.ca.gov>
**Subject:** FW: Timeliness override

Rick

I got this e-mail from Dual diagnosis last week and I just wanted to give you a heads up that you might be hearing from Dr. Edna Miller (or her biller) in the next couple of weeks.  I have another e-mail from her and I'll be sending it to you shortly.

Mike Branum

**From:** Hughes, Mary (DHCS CA-MMIS-OMB)
**Sent:** Monday, December 10, 2012 2:30 PM
**To:** Branum, Michael (DHCS CA-MMIS-OMB)
**Subject:** FW: Timeliness override
**Importance:** High

This is another one sent Friday

Thank you,

1

COPY

Name & Address:
Kent W. Easter
LAW OFFICE OF KENT W. EASTER
18 Santa Eulalia
Irvine, CA 92606
Tel.: (949) 981-9447

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUAL DIAGNOSIS ASSESSMENT AND TREATMENT CENTER, INC., <br><br> PLAINTIFF(S) <br><br> v. <br><br> THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, MARY HUGHES, and XEROX BUSINESS SERVICES, LLC , and DOES 1-25. <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV13-6935 SVW(VBKx) <br><br><br> **SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Kent W. Easter_____, whose address is _18 Santa Eulalia, Irvine, CA  92606_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

SEP 1 9 2013

Clerk, U.S. District Court

JULIE PRADO

Dated: _____

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Stephen V. Wilson_____ and the assigned Magistrate Judge is _____Victor B. Kenton_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13CV6935 SVW VBKx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.


Clerk, U. S. District Court

_____September 19, 2013_____
Date

By  _J.Prado_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**